## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
### Case No. 0:21-cv-60825-RAR-SNOW

UNITED STATES OF AMERICA,

     Plaintiff,

v.

ROGER J. STONE, ET AL.,

     Defendants.

_____

## UNOPPOSED MOTION FOR
## MODIFICATION OF MEDIATION ORDER

The United States respectfully moves the Court for relief from the requirement (see ECF No. 44) for an in-person mediation. The parties have conferred, and all parties request leave to conduct the mediation virtually rather than in-person.

The United States also requests relief from the requirement that a representative with full authority to settle the case attend the mediation on behalf of the United States. See ECF No. 44. The United States proposes that the undersigned Trial Attorney attend the mediation, with government officials who hold the appropriate level of authority that is expected to be necessary to settle this case available for consultation by telephone as needed. The parties have conferred and

Defendants do not oppose this relief.[1]

The undersigned has also consulted with the jointly-selected mediator for this case, Mr. Lichter, who indicated agreement to all of the relief requested in this motion.

Good cause exists for the granting of this motion as the relief requested will (1) allow for a safe mediation by avoiding travel and in-person meeting risks associated with Covid, as explained below; and (2) allow the Department of Justice to follow its normal settlement procedures which promote the uniformity and efficiency of tax administration throughout the United States.

## I.   The Parties Should be Allowed to Conduct the Mediation Remotely Because of Health Risks of Travel and In-person Meetings Particular to this Case.

The Covid-19 pandemic is ongoing. Counsel for the United States would need to travel by airplane to Florida to participate in an in-person settlement conference. Defendant Nydia Stone is recovering from recent cancer treatment, surgery, and COVID. A remote mediation would allow the parties to avoid the potential health risks currently associated with travel and in-person meetings.

---

[1] Defendant Broward County has been excused from attending the mediation. See ECF No. 47.

## II.     The Court Should Excuse the United States from the Requirement to Have an Official with Full Settlement Authority Attend the Mediation.

The United States fully supports settlement efforts in this case. It would, however, be inefficient and impractical for Department of Justice personnel with full settlement authority to attend the mediation. The attorney assigned to this case can engage most effectively in settlement efforts, but applicable federal statutory and regulatory scheme does not vest them with full settlement authority. And it is not practical for officials who do possess full settlement authority to personally attend all settlement conferences. The assigned trial attorney can and will promptly confer with appropriate officials in order to conduct an effective and swift mediation. Indeed, Florida Courts have recently approved this procedure. *United States v. Lezgus*, No. 20-cv-644-JLB-MRM, Doc. 44 (M.D. Fla. July 27, 2021) (oral order granting leave for Trial Attorney to conduct mediation without full settlement authority); *United States v. Bishop*, No. 6:19-cv-1073-ORL-40-LRH, 2020 WL 7407541, at *2 (M.D. Fla. Jan. 29, 2020) (order granting United States' motion for relief from requirement that a person with settlement authority personally attend mediation); *United States v. Green, et al.*, No. 1:19-24026-KMM, Doc. 33 (S.D. Fla. June 23, 2020) (paperless order) (excusing the United States from the requirement that an official with full settlement authority attend the mediation of an FBAR penalty matter).

A.    **Federal Law Governing the Department of Justice Does Not Provide the Assigned Attorney with Full Settlement Authority.**

In cases arising under the Internal Revenue Code, the Attorney General "or his delegate" may compromise cases after they have been referred to the Department of Justice by the Secretary of Treasury. 26 U.S.C. § 7122(a). The Attorney General has delegated limited settlement authority to the Assistant Attorneys General in charge of the various litigating divisions. *See* 28 C.F.R. § 0.160. Under certain circumstances, settlement authority may be delegated to an official below the level of the Assistant Attorney General for the particular litigation divisions.

The United States filed this suit seeking to reduce to judgment unpaid income taxes plus penalties and interest, totaling $1,638,455.23 as to Roger and Nydia Stone jointly and severally as of January 15, 2022, and $440,865.72 as to Roger Stone individually, plus further interest and statutory additions as allowed by law. The Stones have not yet made a settlement offer to resolve those liabilities; therefore, the amount of the monetary concession the government may be asked to make remains unknown. As a result, we are unable to determine the person with settlement authority to resolve this case until the Stone's make a formal proposal.  The official most likely to have settlement authority will either be the Chief of the Southern Civil Trial Section (Angelo Frattarelli), who is authorized to accept settlements with a monetary concession of $500,000 or less, or the Chief of the Office of Review (Jim Wilkinson), whose settlement authority is capped at concessions of $1.5 million.

See 28 C.F.R. 0.160(a)(1), appx. to subpart Y, Tax Division Directive No. 139, Section 2(A); Department of Justice Tax Division Directive 142A The United States proposes to have Messrs. Frattarelli and Wilkinson available by telephone during the settlement conference to the extent needed to act on any offers the Stones make at that time. .

The Department of Justice's policy of concentrating settlement authority serves a number of important public-policy goals. First, it fosters uniformity of settlements, an important consideration given the Department's nationwide docket of cases. It also promotes fairness of settlements to both litigants and to the government. By affording a high-level review of the settlement recommendations by trial attorneys, the process ensures a thorough analysis of all settlement proposals, including such considerations as litigation risks, and an opportunity to assess the proposed settlement outside the context of a heated negotiation.

Indeed, the Fifth Circuit has held that the policies underlying the concentration of settlement authority should not be disregarded by federal district courts. *In re Stone*, 986 F.2d 898 (5th Cir. 1993). Stone involved twelve consolidated petitions for mandamus, all arising from one district court which had incorporated into its routine pretrial orders a requirement that settlement conferences be held and that each party either personally attend or send a representative with full settlement authority. *Id*. at 900. The government argued that the district court lacked the

authority to dictate to the Executive Branch which officials it should send to represent it at settlement conferences. While the Fifth Circuit stated that the district court did possess an inherent power to manage the settlement process, which might, in unusual circumstances, include the power to order participation by specific officials having settlement authority, it went on to hold that the district court had abused its discretion by ordering that the government send someone with full settlement authority for routine cases. *Id*. at 903–05.

The court also observed that the government is in "a special category" as a litigant. *Id*. at 904; *see also Mayfaire v. United States*, No. 18-CV-61643, 2019 WL 8810372, at *1 (S.D. Fla. Apr. 26, 2019) ("[T]he government is in a special category of defendant because of its need for centralized decision-making and because it is a party to a far greater number of cases on a nationwide basis than even the most litigious private entity.") (citation omitted). Not only does the government appear as a party in far more federal court cases than any other litigant, but the Executive Branch has special constitutional duties that no private litigant shares. *In re Stone*, 986 F.2d at 904. Accordingly, the government can legitimately structure its litigation procedures so as to ensure that decision making on policy issues is centralized, that positions taken are consistent, and that policy decisions are made by officials with political accountability. *Id*. The Fifth Circuit chastised the district court for requiring the government to forego these interests in routine cases, in which the operation of

normal government settlement procedures would cause only an "insignificant interference with the operation of the courts." *Id*. Instead, the court held that a district court should consider "less drastic steps" before ordering the Executive Branch to override its normal procedures. *Id*. at 905.

Likewise, the U.S. Court of Appeals for the Ninth Circuit issued a writ of mandamus directing the district court to vacate an order requiring that a government official with full settlement authority personally attend a routine settlement conference in a tax refund action. *United States v. United States District Court for the Northern Mariana Islands*, 694 F.3d 1051, 1059 (9th Cir. 2012). The Ninth Circuit closely followed the Fifth Circuit's reasoning in Stone, holding (over the United States' objection) that the district court has authority to compel the federal government's attendance at settlement conferences, but had abused its discretion. *Id*. The Ninth Circuit observed: "[T]he federal government . . . is not like any other litigant . . . . The Department of Justice in general and its Tax Division in particular are responsible for a very large number of cases . . . . For [the official with full settlement authority] to prepare for and appear at all settlement conferences for all of those cases would be highly impractical, if not physically impossible." *Id*. Moreover, the court noted that centralizing settlement authority serves the several salutary purposes the Fifth Circuit highlighted, namely, the promotion of uniform

decisions on tax controversies, the effective implementation of policy goals, and the promotion of political accountability. *Id*. at 1060.

**B.     It is Not Practicable for Government Officials with Full Settlement Authority to Personally Attend All Settlement Conferences.**

It would create an undue hardship on the United States to require Department of Justice officials to routinely attend court-ordered settlement conferences.  As discussed above, we believe that settlement authority over any good faith offer will rest with either the Chief of the Office of Review, Jim Wilkinson, who can compromise up to $1.5 million, or the Chief of the Southern Civil Trial Section, Angelo Frattarelli, who has authority to compromise up to $500,000.

The Chief of the Office of Review is currently responsible for overseeing hundreds of potential settlements of the Tax Division of the Department of Justice, with the authority to accept or reject settlements involving a concession by the government that does not exceed $1,500,000.00. He is also responsible for making recommendations in matters involving any differences of opinion between the various sections of the Tax Division, or between the Department of Justice and the Internal Revenue Service, and regarding settlements involving amounts greater than her authority. *See* 28 C.F.R. § 0.160 (Subpart Y); Tax Division Directive No. 139.

The Tax Division employs over 300 attorneys, not including AUSAs handling civil tax cases, who work on cases all over the United States, and who may be

involved in settlement discussions at any given time. The Division is comprised of four regional sections. Mr. Frattarelli is Section Chief of the Southern section, which includes 25 attorneys (including two Assistant Chiefs) who work on cases based on Louisiana, Mississippi, Alabama, Georgia, Florida, and South Carolina. The Section's attorneys work on hundreds of cases that may be involved in settlement discussions at any phase of litigation.

Because of the nature and breadth of each Chief's responsibilities, it would be difficult, if not impossible, for either of them to attend settlement conferences throughout the United States in all of the cases for which they have final settlement authority. Also, because of the nature and breadth of Mr. Frattarelli's responsibilities, it would be difficult, if not impossible, for him to attend settlement conferences in all of the cases for which he has final settlement authority. That is true even for a virtual mediation.

In order to be responsive to all of the cases pending in the Division—and in civil tax matters handled by Assistant United States Attorneys—the Division relies on the attorneys handling its cases in each Section to negotiate offers they can recommend to the Chief of the Office of Review, their Section Chief such as Mr. Frattarelli, or another appropriate official. Using this approach, the Division has consistently produced fair and reasonable compromises that will be acted upon favorably by higher authorities.

Indeed, Congress recognized the impracticality of personal attendance at settlement conferences by Department of Justice officials with full settlement authority in the Judicial Improvements Act of 1990 and in its amendments to Federal Rule of Civil Procedure 16. The Judicial Improvements Act authorizes district courts to adopt "civil justice expense and delay reduction plans," which may include a requirement that "representatives of the parties with authority to bind them in settlement discussions" be "present or available by telephone" during any settlement conference. 28 U.S.C. § 473(b)(5). However, the Act goes on to provide that "[n]othing in [such] plan relating to the settlement authority provisions of this section shall alter or conflict with the authority of the Attorney General to conduct litigation on behalf of the United States, or any delegation of the Attorney General." 28 U.S.C. § 473(c) (emphasis added).

The Senate Report in this statute's legislative history recognizes the importance of maintaining the established limits of delegation within the Department of Justice: "[T]hose district courts that choose to adopt [the settlement authority requirement] should account for the unique situation of the Department of Justice. The Department does not delegate broad settlement authority to trial counsel but instead reserves that authority to senior officials in the United States Attorneys' Offices or in the litigating divisions in Washington." S. Rep. No. 416, 101st Cong., 2d Sess. 58, reprinted in 1990 U.S. Code Cong. & Adm. News 6802, 6848. The

Senate Report also recognizes the practical consequences of the limited delegation on the Department as a litigant: "[c]learly, the Department cannot realistically send officials with full settlement authority to each settlement conference." *Id.*

Moreover, the committee that wrote the revisions to Federal Rule of Civil Procedure 16 that took effect on December 1, 1993, reaffirmed that federal trial courts must account for the government's special status when promulgating orders concerning pre-trial conferences. Indeed, Rule 16 now contains the following language at the end of subdivision (c): "If appropriate, the court may require that a party or its representative be present or reasonably available by other means to consider possible settlement." The drafting committee notes on the 1993 revision read:

> The sentence refers to participation by a party or its representative. Whether this would be the individual party, an officer of a corporate party, a representative from an insurance carrier, or someone else would depend on the circumstances. Particularly in litigation in which governmental agencies or large amounts of money are involved, there may be no one with on-the-spot settlement authority, and the most that should be expected is access to a person who would have a major role in submitting a recommendation to the body or board with ultimate decision-making responsibility. The selection of the appropriate representative should ordinarily be left to the party and its counsel.

FED. R. CIV. P. 16, drafting committee note for 1993 Amendments. This makes clear that the committee and the Supreme Court are fully aware of the federal

11

government's unique role in litigation and the practical problems that would ensue if the government were subject to the same settlement-authority requirements as a private party.

      **C.**    **Attendance of Trial Attorneys at Settlement Conferences and Subsequent Recommendations to Appropriate Officials Constitute an Effective and Swift Procedure to Achieve the Goals of Mediation.**

As stated above, the United States supports settlement conferences, and it is the Attorney General's policy to encourage alternative dispute resolution where appropriate. Moreover, the United States fully understands the related goal of encouraging parties to move from their original positions by having present representatives with full settlement authority. It is, however, unlikely that these goals will be served by requiring the participation at a settlement conference of an official with full settlement authority under the present circumstances.

On the contrary, the goal of meaningful settlement discussions can best be achieved by the attorneys who are most familiar with the case and are in the best position to negotiate on the government's behalf. Trial attorneys routinely discuss settlement options with opposing counsel, field written settlement offers distilled from these talks, and submit written recommendations to their supervisors. They also communicate these recommendations to IRS personnel, when necessary. Given the trial attorneys' familiarity with their cases, their recommendations with respect to a

settlement are generally given great weight, even though they lack the ultimate authority to formally accept a settlement offer.

Although the United States believes the attorney assigned to this matter can handle the mediation, the United States will ensure that the Chief of the Office of Review, as well as the Chief of the Southern Civil Trial Section, are available during the settlement conference to consult via telephone, if the need arises.

## III.    Conclusion

The parties request a virtual mediation to avoid health risks associated with Covid. Allowing a virtual mediation and further allowing the United States to mediate through its trial attorney will result in an effective and safe mediation.


Date:  March 21, 2022


                              Respectfully submitted,

                              David A. Hubbert
                              Deputy Assistant Attorney General

              By:
                              */s/ Christopher J. Coulson*
                              CHRISTOPHER J. COULSON
                              New York Bar Number 5162383
                              Trial Attorney, Tax Division
                              U.S. Department of Justice
                              Post Office Box 14198
                              Ben Franklin Station
                              Washington, D.C. 20044
                              Telephone:  (202) 353-0061

Facsimile:  (202) 514-4963
Christopher.J.Coulson@usdoj.gov

*Of Counsel*

Juan Antonio Gonzalez
United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above document has been furnished on March 21, 2022, to all counsel of record by filing it via ECF.

/s/ Christopher J. Coulson
CHRISTOPHER J. COULSON

## Rule 3.01(g) Certification

In accordance with Local Rule 3.01(g), I HEREBY CERTIFY that I conferred with counsel of record for the Stone Defendants by e-mail on March 9 and March 18, 2022, and each indicated that Defendants do not oppose the relief requested herein..

I FURTHER CERTIFY that I conferred with Mr. David Lichter, who has been appointed as mediator for this case, by telephone on March 9, 2022, and Mr. Lichter indicated that he does not oppose the undersigned Trial Attorney attending mediation without full authority to settle the case, if agreed by opposing counsel and approved by this Court.

/s/ Christopher J. Coulson
CHRISTOPHER J. COULSON

15